Nancy L. NUGENT, Appellant,

v.

Brian Thomas KERR, et al., Respondents.

No. C3–95–1308.

Court of Appeals of Minnesota.

Feb. 20, 1996.

Review Granted April 16, 1996.

Arlo H. Vande Vegte, Long Lake, for appellant.

Douglas R. Shrewsbury, Votel & Anderson, Minneapolis, Eric J. Magnuson, Sarah E. Morris, Rider, Bennett, Egan & Arundel, Minneapolis, for respondents.

Considered and decided by HARTEN, P.J., and KLAPHAKE and AMUNDSON, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Nancy L. Nugent sued respondent Brian Thomas Kerr for personal injuries sustained in a motor vehicle accident. On appeal, she argues that the trial court erred in granting Kerr a directed verdict on her punitive damages claim and in refusing to grant her a new trial on both punitive and compensatory damages. Because we conclude that evidence of Kerr's financial condition was not an essential element of Nugent's punitive damages claim, we reverse and remand for a new trial only on punitive damages.

## FACTS

On January 20, 1991, Kerr consumed beer and schnapps over the course of the day while ice fishing with a friend. According to Kerr, he drank "two or three more beers" after entering a bar in Corcoran at about 5:30 p.m. Kerr and his friend left the bar one half hour later, with Kerr driving. Soon after, Kerr collided head-on with a car in which Nugent was a passenger. Kerr was arrested and took an Intoxilyzer test, which established that his blood alcohol content was .17. He was later convicted of driving with an alcohol concentration of .10 or more.

Nugent sued Kerr, alleging that she sustained serious and permanent injuries as a result of the accident. The court bifurcated the trial to separately consider Nugent's compensatory and punitive damages claims.

During the compensatory damages portion of the case, Kerr admitted liability. Kerr also agreed that Nugent suffered a collapsed lung, broken ribs, and neck and knee injuries as a result of the accident and that she was entitled to damages for those injuries. Kerr, however, disputed Nugent's claim that her Temporal Mandibular Joint (TMJ) disorder was caused by the accident.

Nugent acknowledged that she had a history of medical problems, including headaches and mental health problems, and that two years earlier she had seen a TMJ specialist for possible jaw-related ailments. Nugent further acknowledged that she did not have any jaw pain immediately after the accident and that she did not experience jaw problems until several months later.

Nugent's treating physician testified that Nugent has a permanent, degenerative TMJ

condition that was caused by the accident. He explained that TMJ pain or problems can occur months or even years after jaw trauma.

Kerr's expert disagreed. Kerr's expert testified that Nugent suffered from a non-advanced TMJ condition, unrelated to the accident. He explained that TMJ problems are caused by a direct blow to the jaw and that the pain is immediate. He further testified that Nugent's TMJ problems could not have been caused by an indirect or whiplash-type trauma. Kerr's expert attributed Nugent's condition to periodontal work she had following the accident.

During their closing arguments, the parties framed the primary issue for the jury as whether Nugent's TMJ problems were caused by the accident. In response to special verdict questions, the jury awarded Nugent $6,076.08 in medical expenses and $25,000 for past pain, suffering, and disability for a total award of $31,076.08. The jury awarded no future damages.

During the punitive damages portion of the case, Nugent presented a number of witnesses who testified about Kerr's intoxication and behavior at the accident scene. Those witnesses testified that Kerr appeared intoxicated, laughed after the accident, and had beer cans in his car. Kerr admitted that he had had too much to drink and that his reactions and coordination were impaired. Nugent's final witness, the arresting officer, was late for his trial appearance. The court denied Nugent's request for a continuance to allow the officer to testify, concluding that the officer's testimony would be merely cumulative.

Kerr moved for a directed verdict for Nugent's failure to offer evidence of his financial condition pursuant to Minn.Stat. § 549.20 (1994). Nugent moved to reopen her case to recall Kerr and establish his financial condition. The court denied Nugent's motion to reopen and directed a verdict for Kerr on the issue of punitive damages.

Nugent moved for a new trial and amended findings under Minn.R.Civ.P. 59.01. She alleged that the trial judge's nonverbal misconduct influenced the jury not to award damages for her TMJ disorder. She claimed that the judge smiled at the jury during her expert's direct examination and during her attorney's closing argument.

The trial court denied Nugent's post-trial motions. The court denied engaging in any conduct that could have been interpreted as creating an air of partiality and questioned the failure of Nugent's attorney to raise the issue when the alleged behavior occurred. This appeal followed.

## ISSUES

I. Is Nugent entitled to a new trial on punitive damages because the trial court erred in ruling that Kerr's financial condition was an essential element of Nugent's punitive damages case?

II. Is Nugent entitled to a new trial on compensatory damages either because a retrial on punitive damages alone is impractical or because there was judicial misconduct that was prejudicial?

## ANALYSIS

### I.

Nugent argues that the trial court erred in directing a verdict against her for failing to present evidence on Kerr's financial condition. She claims that evidence of a defendant's financial condition is not an essential element of a punitive damages claim and that such evidence can be received at any point in the punitive damages portion of a case. *See* Minn.Stat. § 549.20, subd. 4 (1994) (evidence of defendant's financial condition not admissible during compensatory damages phase of case).

In some jurisdictions, the burden is on a plaintiff to introduce evidence of a defendant's financial condition. *See, e.g., City of El Monte v. Superior Court,* 29 Cal.App.4th 272, 34 Cal.Rptr.2d 490, 492 (1994) (if entitled to punitive damages, plaintiff has burden of producing evidence on appropriate amount of such damages); *Herman v. Sunshine Chem. Specialties, Inc.,* 133 N.J. 329, 627 A.2d 1081, 1088 (1993) (plaintiff has burden of proof to establish defendant's financial condition in punitive damages case). In others, a plaintiff

may make a tactical decision not to present such evidence, particularly in a case involving a defendant with limited assets. *See, e.g., Black v. Iovino*, 219 Ill.App.3d 378, 162 Ill. Dec. 513, 580 N.E.2d 139, 150 (1991) (plaintiff may choose whether to offer evidence of defendant's financial condition).

■ In Minnesota, a defendant's financial condition is only one of many factors to consider when "measuring" an award of punitive damages. Minn.Stat. § 549.20, subd. 3 (other factors include seriousness of hazard to public arising from defendant's misconduct, attitude and conduct of defendant on discovery of misconduct, and total effect of other punishment imposed upon defendant); *see also* 4 *Minnesota Practice*, CIVJIG 195 (Supp.1996). Thus, evidence of a defendant's financial condition is an important consideration in determining whether a punitive damages award is excessive, but it is not necessarily an essential element to prove entitlement to those damages. *Cf. Gilchrist v. Perl*, 387 N.W.2d 412, 416–17 (Minn.1986); *Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn.1982) (defendant's financial condition must be considered in order to ensure that award is not excessive).

■ Evidence of a defendant's financial condition may be presented and considered at any time during the punitive damages portion of a case. In *Estate of Hartz v. Nelson*, 437 N.W.2d 749, 757 (Minn.App. 1989), *review denied* (Minn. July 12, 1989), the jury heard no evidence of the defendant's financial condition, and this court remanded the matter to the trial court to consider the defendant's financial condition. In *Rosenbloom v. Flygare*, 501 N.W.2d 597, 601 (Minn.1993), the defendant presented evidence of his financial condition in a new trial motion, and the supreme court ordered a remittitur of the punitive damages award. While these cases did not turn on the plaintiffs' failure to introduce evidence of the defendants' financial condition, the reviewing courts did not consider this lack of evidence fatal to the plaintiffs' cases.

■ We therefore conclude that the trial court erred in determining that evidence of Kerr's financial condition was an essential element of proof required by Minn.Stat. § 549.20. We reverse the directed verdict for Kerr on Nugent's punitive damages claim and remand for a new trial on that issue. Because the matter is remanded for a new trial on punitive damages, we need not address the issue of whether the trial court improperly refused to allow Nugent a continuance to present the testimony of the arresting officer.[1]

## II.

■ Nugent argues that she is entitled to a new trial on compensatory damages because a retrial may not be limited to the issue of punitive damages. *See* Minn.Stat. § 549.20, subd. 4 (requiring same trier of fact to decide both compensatory and punitive damages). In at least two cases, the supreme court mentioned the impracticality of requiring or allowing a retrial limited to the issue of punitive damages. *See, e.g., Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 837 (Minn.1988) (court hesitant to grant new trial solely on punitive damages issue and chose to remit punitive damages award), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Stanger v. Gordon*, 309 Minn. 215, 222, 244 N.W.2d 628, 632 (1976) (punitive damage award remitted rather than retried). These cases, however, do not mandate that we grant a new trial on compensatory damages in this case. Here, the issues of liability are uncomplicated and neither party has demonstrated that it would be prejudiced by a retrial on punitive damages alone. We therefore reject Nugent's claim that a new trial on compensatory damages is necessary.

■ Nugent also argues that she is entitled to a new trial on compensatory damages

1. We note that in response to Kerr's motion for a directed verdict, the trial court could have properly exercised its discretion to allow Nugent to reopen her case. *See G & T Trucking Co. v. GFI America, Inc.*, 535 N.W.2d 658, 662 (Minn.App. 1995) (assuming no prejudice, trial court may allow party to reopen case to provide missing proof and avoid directed verdict). Little or no prejudice would have resulted to Kerr had Nugent's case been reopened: only 45 minutes had passed, the jury was still assembled, and the evidence was easily available.

because the verdict was tainted by judicial misconduct which "conveyed repugnancy towards her compensatory damages case to the jury" and consisted of "[s]ustained smiles exclusively aimed at [her] expert during direct examination and at her counsel's summation." *See Block v. Target Stores, Inc.,* 458 N.W.2d 705, 712–13 (Minn.App.1990) (appellant entitled to new trial due to judge's improper sarcastic and derogatory remarks to appellant's counsel), *review denied* (Minn. Sept. 28, 1990). Nugent, however, failed to object to the judge's alleged misconduct when it occurred and did not request a curative instruction. Her failure to make any record of her objections is a practical obstacle that becomes dispositive for this reviewing court because the alleged misconduct was nonverbal. *See Sauter v. Wasemiller,* 389 N.W.2d 200, 202 (Minn.1986) (to preserve issues for review, counsel must make timely objections and move for new trial).

■ Even if we were able to review Nugent's claim of judicial misconduct, Nugent has failed to demonstrate prejudice. *See Fortier v. Ritter's Hairdressing Studios, Inc.,* 282 Minn. 382, 386, 164 N.W.2d 897, 899–900 (1969) (new trial will be granted only when judge's conduct so prejudicial that fair and impartial determination by jury improbable). Nugent insists she was obviously prejudiced by the judge's behavior, as demonstrated by the fact that the jury awarded her no damages for her disorder. The jury's award of over $31,000 in compensatory damages, however, shows that it was not biased. Moreover, the evidence supports the verdict, particularly the testimony of Kerr's expert, who stated that he did not believe Nugent's TMJ disorder was caused by the accident. *See Shymanski v. Nash,* 312 Minn. 304, 308, 251 N.W.2d 854, 857 (1977) (jury's acceptance of one expert's opinion over another will be sustained as long as that opinion has reasonable factual basis). Thus, we conclude that the trial court properly determined that Nugent was not entitled to a new trial on compensatory damages.

## DECISION

The trial court erred in determining that evidence of a defendant's financial condition is an essential element to a plaintiff's punitive damages claim and in directing a verdict for Kerr on that basis. We therefore reverse the directed verdict and remand for a new trial on punitive damages.

**Reversed and remanded.**