KMART CORPORATION, Relator,

v.

COUNTY OF BECKER, Respondent.

No. C6–01–826.

Supreme Court of Minnesota.

Feb. 28, 2002.

Laurie J. Miller, Thomas R. Wilhelmy, Fredrikson & Byron, P.A., Minneapolis, Relator's Attorney(s).

Gretchen Dee Thilmony, Assistant Becker County Attorney, Detroit Lakes, Respondent's Attorney(s).

## OPINION

BLATZ, Chief Justice.

This property tax appeal raises two issues for our consideration. The first issue concerns when a property's status as income-producing is determined for the purposes of Minn.Stat. § 278.05, subd. 6(a) (2000), the 60–Day Rule, and the second concerns whether relator provided sufficient income information to the county pursuant to the 60–Day Rule. The tax court ruled that the relevant date of inquiry for whether property is income-producing is the date of assessment and that the income information the relator provided within the statutory time period was insufficient. Accordingly, the tax court dismissed relator's chapter 278 petition for failure to comply with the statute. Be-

cause the tax court did not err in determining the property's status nor in applying the clear language of the 60–Day Rule to the undisputed facts, we affirm.

Relator Kmart Corporation operates a retail store in a shopping center in Detroit Lakes, Minnesota. Kmart leased the property for its store until October 14, 1999, when it purchased the same property. On March 31, 2000, Kmart filed a chapter 278 petition challenging the Becker County assessor's 1999 valuation of the property. Minnesota Statutes § 278.05, subd. 6(a) requires that all petitioners challenging assessments for income-producing property provide the county with information, "including income and expense figures, verified net rentable areas, and anticipated income and expenses * * * within 60 days after the petition has been filed under this chapter." *Id.* Kmart timely provided the county with a lease summary and a copy of pertinent sections of its former lease. This information disclosed that Kmart's lease provided for an annual minimum rent, but also contained a provision known as a percentage rent clause, requiring additional rent if Kmart's gross retail sales for the year exceeded a specified amount. Kmart did not provide other information specifying the actual rent paid or whether the percentage rent clause was triggered.

Becker County filed a motion to dismiss the petition, arguing that the income information provided by Kmart was incomplete and, therefore, insufficient. Specifically, the county asserted that the information provided by Kmart did not meet the requirements of the 60–Day Rule because the information provided did not indicate whether the percentage rent clause had been triggered. Thus, the county argued that it did not know and could not determine what rent was actually paid.

In response to the county's motion to dismiss, Kmart first contended that its property was not subject to section 278.05, subd. 6(a) because it had purchased the property on October 14, 1999, and consequently the property was owner-occupied and therefore not income-producing at the time the petition was filed in March of 2000. Kmart further argued that if the property was subject to section 278.05, subd. 6(a), the information it supplied did comply with the statute because the percentage rent clause had not been triggered and no additional rent beyond the minimum amount stated in the lease summary was owed.

The tax court dismissed Kmart's petition. In doing so, the tax court stated: "We find the relevant date for determination of the status of a property for purposes of the 60–Day Rule to be the date of assessment. Therefore, in this case, because the subject property was income-producing on the date of assessment * * * the 60–Day Rule requirements apply." *Kmart Corp. v. County of Becker*, No. C2–00–395, 2001 WL 311234 (Minn. T.C. March 16, 2001). The tax court then concluded that the income information provided by Kmart failed to comply with the requirements of the statute, because even though Kmart provided some lease information, it failed to provide necessary information as to what rent was in fact paid.

■ Our review of the tax court's decision is limited to whether the tax court had jurisdiction, whether its decision was justified by the evidence and in conformity with the law or whether it committed an error of law. Minn.Stat. § 271.10, subd. 1 (2000). When the parties do not dispute the relevant facts, as here, we review legal issues de novo. *BFW Co. v. County of Ramsey*, 566 N.W.2d 702, 704 (Minn.1997).

■ Minnesota Statutes § 278.05, subd. 6(a), the 60–Day Rule, applies to

income-producing property.[1] Kmart first raises the issue of when a property's status as income-producing is determined for purposes of this rule. In Minnesota, real property subject to taxation is appraised with reference to its value on January 2 of the assessment year. Minn.Stat. § 273.01 (2000). Because the purpose of the 60–Day Rule is to provide information that would be useful to the determination of value, the relevant date of inquiry for whether property is income-producing is the date of assessment, not the date the petition is filed. *See Menards, Inc. v. County of Sherburne*, No. C2–98–460, 1998 WL 668734 at *2 (Minn. T.C. Aug. 20, 1998) (finding that property was not income-producing because it had no rental income at the time of assessment). Kmart's purchase of the leased property on October 14, 1999, does not change the property's status on the assessment date, January 2, 1999. Therefore we affirm the tax court and hold that the assessment date is the relevant date of determination of a property's status as income-producing under Minn.Stat. § 278.05, subd. 6(a).

■ Next we determine whether the income information provided by Kmart complies with the requirements of the 60–Day Rule, which states:

> Information, including income and expense figures, verified net rentable areas, and anticipated income and expenses, for income-producing property must be provided to the county assessor

within 60 days after the petition has been filed under this chapter. Failure to provide the information required in this paragraph shall result in the dismissal of the petition, unless the failure to provide it was due to the unavailability of the evidence at that time.

*Id.* The text of the statute is clear—information must be timely provided unless it is unavailable. Further, the statute mandates dismissal upon the failure to provide the information, and does not require that the delay in providing information cause actual prejudice. *BFW*, 566 N.W.2d at 704–05. Kmart has not argued that the disputed information was not available to it during the statutory time period.

■ We recognize that section 278.05 subd. 6(a) provides an extraordinary remedy unlike our traditional rules of discovery.[2] A chapter 278 petition exists to provide "an adequate, speedy, and simple remedy" for a taxpayer who claims that real estate has been unfairly assessed. *Land O'Lakes Dairy Co. v. Village of Sebeka*, 225 Minn. 540, 548, 31 N.W.2d 660, 665 (1948). The legislature has made clear that a chapter 278 petition must be adjudicated promptly. Minn.Stat. § 278.05, (stating that a court "shall without delay summarily hear and determine the claims"). Delays in adjudication have obvious adverse impacts on taxing authorities' ability to set levies and establish bud-

---

1. Property that generates rental income for its owner is considered to be income-producing. *Northwest Airlines Inc. v. County of Hennepin*, 632 N.W.2d 216, 219 (Minn.2001); *Equitable Life Assurance Soc'y v. County of Ramsey*, 530 N.W.2d 544, 549 (Minn.1995).

2. The rules of civil procedure governing discovery allow parties to file a motion to compel discovery to resolve disputes regarding a party's response to a request for discovery. Minn. R. Civ. P. 37.01(b) (providing that a

party may move the court to compel discovery after conferring or attempting to confer in an effort to secure the information without court action). In addition, the rules of civil procedure allow a court to dismiss an action for failure to comply with discovery obligations only under exceptional circumstances. Minn. R. Civ. P. 37.02(b)(3); *Beal v. Reinertson*, 298 Minn. 542, 544, 215 N.W.2d 57, 58 (1974). Were we operating in the traditional realm of civil discovery, those principles would apply.

gets. Therefore, as we have recognized previously, strict enforcement of the 60–Day Rule advances the legislative purpose of providing an adequate, speedy, and simple remedy. *BFW*, 566 N.W.2d at 705; *see also Mendota Mall Assocs. v. County of Dakota*, 578 N.W.2d 350, 350 (Minn. 1998) (applying *BFW* ).

Nonetheless, Kmart urges this court to soften what it views as the hard edges of the law. Specifically, Kmart contends that when a petitioner provides the lease information provided here, then the counties and the court should presume that the minimum rent was the only rent due, and that the petitioner satisfied its disclosure obligations under the 60–Day Rule. Thus Kmart advocates that county assessors and the courts proceed, in the absence of an indication to the contrary, on the presumption that contingent clauses in the lease have not affected base rent. While at first glance such an approach is seemingly reasonable, problems in its application become readily apparent. To begin with, we have concerns that such a presumption may not in fact be justified.[3] Further, creating a presumption in favor of the petitioner is likely to result in tax petitioners providing and the county relying on incomplete or vague information. In that event, valuations would be unequal and inaccurate, contrary to legislative intent.

Second, in order to rebut such a court-created presumption, the burden would shift to the county to conduct further discovery of the accuracy of the information provided by petitioner. While on the facts of this case it may appear reasonable for the county to obtain from the taxpayer a simple indication whether the percentage rent clause was triggered, this burden-shifting directly contradicts the allocation of the burden of proof to the petitioner in a chapter 278 proceeding. *In re Objections & Defenses to Real Property Taxes for the 1970 Assessment*, 306 Minn. 184, 186–87, 235 N.W.2d 390, 392 (1975). Further, it would delay the process in other cases where insufficient but necessary information is provided that needs further clarification in order to be meaningful to the assessor. Therefore, we reject the invitation to modify the 60–Day Rule by reading such a presumption into it.[4]

■ In reaching this decision, we recognize that taxation is uniquely a function of the legislature, *Wulff v. Tax Court of Appeals*, 288 N.W.2d 221, 224 (Minn.1979), and the legislature has provided chapter 278 as the exclusive remedy for challenging the assessments upon which property taxes are based, *Bethke v. County of*

---

3. This point is illustrated by a comparison of this case with the companion cases from St. Louis County also released today. *Kmart Corp. v. County of St. Louis*, 639 N.W.2d 866 (Minn. 2002). In each of the three consolidated St. Louis County cases, the same lease information was provided as here—that is, simply the lease and lease summary, with no specification of whether additional rent was owed under each lease's percentage rent clause. In fact, the percentage rent clause was triggered as to each of the St. Louis county properties, arguably indicating a greater property value than would have been indicated by the presumption Kmart urges here.

4. The dissent rejects this conclusion on the basis that during the assessment process the assessor makes many assumptions regarding the truthfulness and accuracy of information provided, and then continues to illustrate this point by referring to several examples of how information provided may be untruthful. In response, we simply note that this case is not about the intentional provision of untruthful information but rather Kmart's provision of meaningless income information that would require the assessor to create and apply legal presumptions to it to avoid the statutorily required dismissal of the petition under Minn. Stat. § 278.05.

*Brown,* 301 Minn. 380, 385, 223 N.W.2d 757, 761 (1974). The legislature has chosen to limit the remedy by requiring tax petitioners to provide certain information within 60 days and requiring dismissal upon failure to provide that information.[5] We therefore decline to soften the 60–Day Rule and instead, leave the overall balancing of competing tax policy considerations to the legislative branch of government.

Accordingly, we continue to strictly enforce Minn.Stat. § 278.05, subd. 6(a). In this case, there can be no dispute that the rent Kmart paid to the property owner constitutes income relating to the property. While Kmart timely provided its lease information, it never disclosed the amount of rent it actually paid. While the county later learned that Kmart's gross retail sales in 1999 did not exceed the specified amount triggering the percentage rent clause, the county did not and could not have known this within the 60-day period based on the information provided by Kmart. Without this information, the assessor could not begin the valuation process.[6] Therefore, the decision of the tax court to dismiss the case is affirmed.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent from the court's decision to dismiss Kmart's petition under the 60–Day Rule contained in Minn.Stat. § 278.05, subd. 6(a) (2000). The court accepts the county's argument that, because Kmart failed to affirmatively state that the percentage rent clause in its lease did not apply, the county did not know and could not determine the amount of rent actually paid by Kmart. The county's argument ignores the facts of this case. The lease furnished by Kmart did contain the amount of rent to be paid. In addition, it stated that this amount could be adjusted upward, but only if Kmart's gross sales for the year exceeded a specified amount. In fact, the amount of rent set out in the lease was the actual amount paid because the gross sales escalator was not triggered. Under these circumstances, Kmart satisfied its burden under the 60–Day Rule, and the assessor, relying on the information provided, should have proceeded under the reasonable assumption that the percentage rent clause did not apply.

---

5. In 1994 the legislature changed the statute to its present form. Act of May 4, 1994, ch. 587, § 15, subd. 6(a), 1994 Minn. Laws 1043, 1115; codified at Minn.Stat. § 278.05, subd. 6(a). Prior to 1994, the law allowed petitioners only 45 days to provide the necessary information, but had a more relaxed sanction for noncompliance: Failure to timely provide the required information rendered the information inadmissible, "except if necessary to prevent undue hardship or when the failure to provide it was due to the availability of the evidence at that time." Minn.Stat. § 278.05, subd. 6(a) (1992). Thus, while in 1994 the legislature extended the time for disclosing information, it strengthened the sanction for noncompliance from suppression of the evidence to dismissal of the petition. *See id.*

6. At the hearing before the tax court in the related case, *Kmart Corp. v. County of Doug-*

*las,* No. C7–00–309, 2001 WL 40361 (Minn. T.C. Jan. 11, 2001) counsel for Kmart conceded this point.

> Question by the Court: In order for an appraiser * * * to make any beginning at a decision as to the value of this property, they need to have—and this is the reason for the 60-day statute—they need to have the actual rent paid, wouldn't they?
> Kmart's counsel: Yes, they would. And by giving them the base rent, we did give them the actual rent paid.
> Court: But they didn't know that, because you didn't give them the rest of the information.
> Counsel: Right. Yes, Your Honor. We knew that, when we turned over what we did. They didn't know that.
> *Id.* at * 4, n. 2.

The court is worried that, as in the companion case of *Kmart Corp. v. County of St. Louis*, 639 N.W.2d 866 (Minn. 2002), this assumption may prove to be inaccurate. Yet this risk is present whenever assumptions are made, and the reality is that an assessor has no choice but to make a wide range of assumptions about the accuracy and completeness of information submitted by every petitioner.[1] An assessor must assume, for example, that the lease is a true and accurate copy of the agreement between petitioner and lessor, and not a work of fiction penned by the petitioner in an effort to minimize his or her tax liability. An assessor must assume, also, that the lease has not been modified or supplanted by a subsequent lease agreement. The law does not require a petitioner to submit information attesting to the authenticity of the lease to guard against the risk that these assumptions are not accurate; I see no reason why it should require such information in this case.

The court also expresses concern that a decision favorable to Kmart would tempt petitioners to provide incomplete or vague information, and that it would shift the burden of proof from the petitioner to the assessor. Apparently, the fear is that a petitioner whose lease contains a base rent amount and a contingent clause might knowingly fail to report that the actual rent paid exceeded the base amount—in other words, that a petitioner might withhold information and hope that the asses-

sor does not discover the omission. I have two responses to this concern. First, the court's decision does not solve this problem. Under the court's reasoning, a petitioner committed to the goal of violating chapter 278's reporting requirements could do so by falsely indicating that a contingent clause does not apply. Unless the assessor assumes that the petitioner's statement is accurate, a practice that the court finds unpalatable, the assessor would then have to engage in further discovery to verify its truth.

Second, the legal consequences that attach to a violation of the reporting requirements, which include immediate dismissal under the 60–Day Rule and the possibility of civil penalties under Minn.Stat. § 289A.60, subd. 12 (2000), greatly diminish the possibility of intentional underreporting.[2] I believe that these remedies should be reserved for those situations in which the paucity of information submitted prevent the assessor from performing the valuation. This case does not present such a situation.

In sum, it appears that Kmart's mistake was not that it provided too little information, but that it provided too much. Under the court's reasoning, had Kmart simply redacted the percentage rent clause from the copy of the lease it submitted to the assessor, the present controversy would almost certainly have been averted. Because Kmart did not do so, the court would require even more information indicating that the clause did not apply. Thus, it

1. In responding to this observation, the court explains that, while the information provided by Kmart in this case was not untruthful, it was meaningless. I find the court's response unpersuasive. Kmart's lease lacks meaning only if an assessor refuses to accept the reasonable notion—whether termed a "presumption" or an "assumption," and whether court-created or the product of common sense— that a contingent clause does not apply unless the petitioner indicates otherwise. The

court's aversion to presumptions aside, the fact remains that, no matter how much information a petitioner provides, an assessor must always make reasonable presumptions/assumptions about the accuracy and completeness of that information.

2. These consequences are in addition to any criminal sanction that may apply.

seems that the court is more concerned with the form of Kmart's submission than its substance. In light of the fact that the information contained in Kmart's lease included the amount of rent actually paid for the property and time period at issue here, and that the lease was submitted within the statutory period of 60 days, dismissal of Kmart's petition is unwarranted.